**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ANDREA SAMAYOA and MARLO HARRIS, *on behalf of themselves and others similarly situated*,<br><br>        Plaintiffs,<br><br>v.<br><br>BUCKHEAD LIFE RESTAURANT GROUP, INC.; PANO KARATASSOS; and NIKO KARATASSOS,<br><br>        Defendants. | CIVIL ACTION NO.<br>1:18-cv-00237-WMR |

## MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AGREEMENT AND DISMISSAL OF CASE WITH PREJUDICE

Named Plaintiffs Andrea Samayoa and Marlo Harris, the opt-in Plaintiffs who have joined this action by filing consents to join (together with Named Plaintiffs Samayoa and Harris, "Plaintiffs") and Defendants Buckhead Life Restaurant Group, Inc, Pano Karatassos, and Niko Karatassos ("Defendants") (Plaintiffs and Defendants collectively referred to as the "Parties"), by and through their undersigned counsel, hereby submit this Memorandum of Law in Support of their Joint Motion for Approval of FLSA Collective Action Settlement Agreement

and Dismissal of Case with Prejudice ("Joint Motion").  The Parties have reached a settlement that would resolve the claims raised in this proceeding.  The settlement agreement is attached hereto as **Exhibit 1** (the "Settlement Agreement").   The Parties agree that the terms reflected in the Settlement Agreement are mutually satisfactory and represent a fair and reasonable compromise of the claims asserted in this action and are in the best interests of the Parties.  The Parties hereby submit the Settlement Agreement for approval by the Court, pursuant to *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982), and respectfully request that the Court enter the Proposed Order: (1) approving the Parties' Settlement Agreement; (2) dismissing this action with prejudice; and (3) retaining jurisdiction over this case to enforce the Parties' Settlement Agreement until final payment of the settlement proceeds are received by Plaintiffs' counsel.

## CASE SUMMARY AND BACKGROUND

On January 16, 2018, Plaintiffs Andrea Samayoa and Marlo Harris filed a collective action Complaint against Buckhead Life Restaurant Group, Inc., Pano Karatassos and Niko Karatassos on behalf of themselves and other similarly-situated employees arising from their employment as tipped servers and bartenders at two of Defendants' restaurants located in Atlanta, Georgia: Buckhead Diner and Pricci. (ECF No. 1.) The Complaint alleges that Defendants failed to pay tipped

servers and bartenders who worked at Pricci and Buckhead Diner all minimum and overtime wages for hours worked in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"). Specifically, Plaintiffs allege that Defendants failed to comply with the FLSA regulations governing payment of minimum and overtime wages to tipped employees. Pursuant to the FLSA, Defendants are entitled to claim a "tip credit" against their minimum wage obligations and pay their tipped employees (i.e., servers and bartenders) sub-minimum direct wages of $2.13 per hour. However, to claim the tip credit and pay tipped employees less than $7.25 per hour, Defendants must permit their tipped employees to keep all their tips and must also provide tipped employees with advance, legally-sufficient notice of their intent to claim the tip credit and the regulations governing the tip credit. *See* 29 U.S.C. § 203(m).

Plaintiffs allege that they were not permitted to keep all their tips and that they were not provided with proper notice of the tip credit regulations. Furthermore, Plaintiffs allege that Defendants removed hours from their time records and forced servers and bartenders to work off the clock for no wages at all. Plaintiffs allege that Defendants are unable to claim the tip credit and must pay servers and bartenders the full minimum wage of $7.25 per hour for all hours worked. Defendants deny all of Plaintiffs' allegations and maintain that they

provided legally-sufficient notice of the tip credit regulations and permitted Plaintiffs to keep their tips. Furthermore, Defendants deny that they removed any compensable hours from Plaintiffs time records and deny that Plaintiffs worked any uncompensated hours off the clock.

On April 16, 2018 Plaintiffs filed a motion for conditional class certification requesting that the Court conditionally certify this case as a collective action and approve the issuance of notice of this lawsuit to all servers and bartenders who worked at Pricci and Buckhead Diner within three years of the filing of the Complaint. (ECF No. 19.)  The Court granted Plaintiffs' Motion for Conditional Certification on July 24, 2018 and on August 29, 2018 notice of this lawsuit was sent to potential class members notifying them of their right to join this lawsuit. Thirty-seven individuals submitted consents to join during the notice period, such that this action now has a total of thirty-nine Plaintiffs including Named Plaintiffs Samayoa and Harris.

On April 17, 2019, the Parties engaged in a mediation under the direction of experienced employment litigator and mediator Craig Cleland, Esq., of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.  While the mediation on April 17 was not successful, counsel for the Parties agreed to continue settlement negotiations with the assistance of Mr. Cleland to determine whether the Parties could reach an

amicable resolution to their dispute. After further extensive negotiations, on June 17, 2019, pursuant to Federal Rule of Civil Procedure 68, Defendants served an offer of judgment on the Plaintiffs. (ECF No. 58). Pursuant to the offer of judgment, Defendants agreed to pay $114,103.54 to the Plaintiffs to compensate Plaintiffs for their alleged unpaid wages and liquidated damages. The offer of judgment also provided that Defendants agreed to pay Plaintiffs' reasonable attorney's fees and costs as determined by either: (1) agreement by counsel for the Parties; or (2) if counsel for the Parties could not agree, as determined by the Court upon Plaintiffs' counsel's submission of a fee petition. Plaintiffs accepted Defendants' offer of judgment within the time provided by the Federal Rules. The Parties then spent the next several weeks trying to reach agreement on the amount of attorney's fees and costs to be paid by Defendants and engaged in another mediation over attorney's fees with the assistance of Mr. Cleland. After much negotiation, Defendants ultimately agreed to pay, and Plaintiffs' counsel agreed to accept, $150,000 in attorney fees and costs.

## SETTLEMENT TERMS

After first reaching an agreement on the amount to be paid to each Plaintiff to resolve Plaintiffs' claims, the Parties separately negotiated payment of the Plaintiffs' attorney's fees, expenses and costs associated with the prosecution of

the claims in this action. Pursuant to the terms of the Settlement Agreement, the Parties have agreed to resolve the wage claims of the thirty-nine Plaintiffs in this action for the total sum of two hundred sixty-four thousand one hundred three dollars and 54 cents ($264,103.54).  This amount was reached only after several weeks of arms-length negotiations, two mediations, and post-mediation negotiations.  It represents the maximum amount that Defendants will pay as part of the settlement, inclusive of all payments to the Plaintiffs, the proposed service payments, and the proposed payment to Plaintiffs' counsel for attorneys' fees, costs and expenses.

The collective payments negotiated for the individual Plaintiffs will total the gross amount of $114,103.54. The amounts due to each Plaintiff will be allocated as 50% for alleged unpaid wages, 50% for alleged liquidated damages, and service payments of $3,500.00 to Named Plaintiff Harris, $4,500.00 to Named Plaintiff Samayoa, $1,500.00 to Plaintiff Norris, $1,500.00 to Plaintiff Owens, $1,500.00 to Plaintiff Rater, and $2,500 to Plaintiff Carr. The list of proposed individual settlement payments to the thirty-nine Plaintiffs is attached to the Settlement Agreement as **Exhibit A**.

The Settlement Agreement also provides for payment by Defendants directly to Plaintiffs' counsel in the amount of $150,000 for the resolution of Plaintiffs'

claims for attorneys' fees, expenses, and costs incurred in this litigation. After first reaching an agreement as to the amount to be paid to resolve Plaintiffs' claims for alleged damages, the Parties separately negotiated payment of the Plaintiffs' attorneys' fees, expenses and costs associated with the prosecution of the claims in this action. The Parties further represent that they negotiated a compromise in the amount of attorneys' fees and costs to be paid to Plaintiffs, and that this compromise represents a fair and reasonable resolution of the amount of attorneys' fees, costs and expenses sought by Plaintiffs.

### STANDARD FOR APPROVAL OF SETTLEMENT AGREEMENT

In order to have an enforceable settlement and release of FLSA claims in the Eleventh Circuit, a court or the Secretary of Labor must review and approve agreements settling alleged violations of the FLSA that involve a compromise of the wages owed. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1352-55. If the district court approves the proposed settlement "after scrutinizing the settlement for fairness," the court may enter a stipulated judgment. *Lynn's Food Stores, Inc.*, 679 F.2d at 1353 (citations omitted). For the reasons explained below, the Parties respectfully request that the Court approve the terms and conditions of their proposed settlement and enter an order dismissing this action with prejudice. The Proposed Order is attached as **Exhibit 2**.

7

In evaluating the fairness of a proposed settlement of overtime claims, a court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the FLSA. *Id.* at 1355; *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1226 (M.D. Fla. 2009).   If the settlement of an employee's FLSA suit reflects a "reasonable compromise over issues," such as FLSA coverage, computation of back wages owed, or hours worked that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.  As Judge Gregory A. Presnell observed:

> [s]hort of a bench trial, the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement. Many factors may be in play as the parties negotiate a compromise that is acceptable to both sides. The parties may disagree as to the number of hours worked by the plaintiff, the plaintiff's status as an exempt employee, or the defendant's status as a covered employer. In certain cases, the Defendant may assert (or threaten to assert) a counterclaim arising from the employment relationship. If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable. Rarely will the Court be in a position to competently declare that such a settlement is 'unreasonable.'

*Bonetti*, 715 F. Supp. 2d at 1227.  Judge Presnell further explained that, where the plaintiff's attorneys' fees are agreed upon without regard to the amount paid to the

plaintiff, "then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney," the court should approve the settlement without separately evaluating the amount of the attorneys' fees for reasonableness. *Id.* at 1228.  Further, "[t]he Court should be mindful of the strong presumption in favor of finding a settlement fair." *Mannino v. Anderson-Collins, Inc.*, No. 607-cv-1853, 2008 WL 2857061, at *2 (M.D. Fla. July 22, 2008) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see Siegenthaler v. Kane Furniture Co. of Ormond Beach, Inc.*, No. 607-cv-173, 2007 WL 1893906, at *2 (M.D. Fla. July 2, 2007) ("[A] settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995))).  "If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.  Rarely will the Court be in a position to competently declare that such a settlement is 'unreasonable.'" *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010) (citation omitted); *see Thomas v. Port II Seafood & Oyster Bar, Inc.*, No. 16-cv-0115, 2016 WL 5662032, at *2 (S.D. Ala. Sept. 29, 2016).

In short, courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1350, 1353 n.8; *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713 (PGG), 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores, Inc.*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *McMahon*, 2010 WL 2399328, at *6.

In determining whether a settlement was negotiated at arms-length, courts look at whether there was "vigorous and comprehensive litigation" or whether the settlement was a result of collusion among the parties. *Pickett v. IBP, Inc.*, No. 96-A-l 103-N, 2001 U.S. Dist. LEXIS 22453 (M.D. Ala. Dec. 21, 2001). The involvement of an objective, third-party neutral indicates arms-length negotiations. *See Martens v. Smith Barney*, 181 F.R.D. 243, 262-63 (S.D.N.Y. 1998) ("the third party mediation process was an appropriate measure for arm's length negotiations"). Absent fraud and collusion, the court not only may rely on the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel." *Diaz v. Hillsborough County Hosp. Auth.*, 2000 WL

1682918, at *4 (M.D. Fla. Aug. 7, 2000) (quoting *Cotton v Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

This lawsuit clearly involves a dispute in which the Court may allow Plaintiffs in this action to settle and release their FLSA claims against Defendants. First, the proposed settlement arises in an adversarial context, with pending litigation and with all Parties represented by competent counsel.  Indeed, each Party was represented by counsel with experience in litigating wage and hour claims on both an individual and collective basis, and each counsel was obligated to and did vigorously represent their clients' rights.

The parties reached the proposed settlement after more than a year of litigation, including extensive investigation, exchange of substantial information and vigorous negotiation under the close supervision of an experienced class action mediator. This case presented numerous contested issues that required extensive research and investigation.

Additionally, the FLSA claims asserted against Defendants involve bona fide disputes about FLSA liability, coverage, hours worked and damages and, consequently, the Settlement Agreement represents a reasonable compromise of the disputed issues.  In the Complaint, Plaintiffs assert three theories of liability. First, Plaintiffs allege that Defendants failed to provide Plaintiffs with proper

notice of the tip-credit regulations. Second, Plaintiffs allege that Defendants did not permit them to keep all their tips. Third, Plaintiffs allege that Defendants removed compensable hours from their time records and forced Plaintiffs to work off the clock, resulting in unpaid wages. Plaintiffs allege that Defendants' practices violate the FLSA and Defendants are prohibited from claiming the tip credit and must pay Plaintiffs $7.25 per her for all hours worked, plus liquidated damages, attorney's fees and costs.

Defendants, on the other hand, deny any liability or wrongdoing of any kind under the FLSA.  Specifically, Defendants maintain that they provided Plaintiffs with legally-sufficient notice of the tip credit regulations. Defendants adduced evidence that managers inform tipped employees during their interviews and new hire orientation that Defendants intend to treat tips as satisfying part of the minimum wage obligations. (Doc. 25-1 ¶¶ 9-10; Doc. 29-1 ¶¶ 9-10). Defendants also allege that the Restaurants display U.S. Department of Labor posters that provide Plaintiffs with proper notice of the trip credit regulations. (Doc. 25-1 ¶ 12; Doc. 25-1 at p. 29; Doc 29-1 ¶ 12; Doc. 29-1 p 20.) Thus, Defendants maintain that Plaintiffs received legally-sufficient notice of the tip credit regulations. *See, e.g., Ide v. Neighborhood Rest. Partners, LLC*, 32 F. Supp. 2d 1285, 1293 (N.D. Ga. 2014) (quotations omitted), *aff'd* 667 F. App'x 746 (11th Cir. 2016) ("the Wage

and Hour Poster properly informed Defendants' tipped employees of the tip credit exemption because a prominently displayed poster using language approved by the Department of Labor to explain 29 U.S.C. § 203(m) is sufficient notice.)[1] If true, this evidence could eliminate Plaintiffs' claims for an FLSA violation based on Defendants' alleged failure to provide proper notice of the tip credit regulations.

Defendants further deny that Plaintiffs were required to work off the clock or that Defendants unlawfully removed hours from Plaintiffs' time records. Defendants maintain that any modifications to Plaintiffs' time records were done for legitimate reasons—such as when employees forgot to clock in or out. Defendants also argue that Plaintiffs' time records show that Defendants added time to Plaintiffs' time records far more frequently than they removed it, and that there is thus no evidence of a company-wide policy of removing hours from Plaintiffs' time records.

Finally, the Company has policies that prohibit the practices about which Plaintiffs complain, and which are intended to ensure proper payment in full compliance with the FLSA.  Doc. 25-1 ¶¶ 8-15, 24-27; Doc. 25-1 at p. 31; Doc. 29-

---

[1] Plaintiffs disagree and maintain that the DOL posters Defendants allegedly displayed at their Restaurants do not provide Plaintiffs with legally-sufficient notice of the tip credit because the DOL poster does not comply with the post-2011 amendments to Section 203(m) and because the poster fails to inform Plaintiffs of all the requirements in Section 203(m). *see e.g., Howard v. Second Chance Jai Alai LLC*, No. 5:15-cv-200, 2016 WL 3883188 at *2 (M.D. Fla. July 18, 2016);

13

1 ¶¶ 8-15, 24-27; Doc. 29-1 at p. 22.  Consistent with these policies, 31 current and former servers and bartenders submitted declarations that they have not had their tips retained, been required to work off-the-clock, or had their hours adjusted illegally.  <u>See</u> Doc. 33-5 to Doc. 33-32; Doc. 33-34 to 33-36.

Thus, there is a bona fide dispute between the Parties concerning theories of liability, hours worked, and damages that could impact the outcome of this litigation. Neither side believes prevailing in the litigation is a certainty, either at the trial or appellate level.  Indeed, both Parties face significant risks if they continue to litigate this case. Accordingly, considering the uncertainty and risks inherent in this litigation for both Parties, and the cost and time which would be required to pursue the litigation further, the Parties have decided that it is desirable and beneficial to settle the litigation in the manner and under the terms set forth in their Settlement Agreement.

At mediation (and in pre and post mediation settlement discussions), the Parties and their counsel considered their competing evidence (including documents produced, data production, and data analyses) and legal arguments (including liability standards, defenses, and overtime computation methodologies), and exchanged and presented competing potential damages calculations based on various assumptions and modeling scenarios.  With the assistance of a skilled

mediator and through weeks of subsequent negotiations, the Parties compromised and negotiated a settlement.

The Parties arrived at the settlement amount to the class as follows: with Defendants' offer of judgment, Defendants' counsel provided Plaintiffs' counsel with a detailed explanation of how the damages were calculated which allowed Plaintiffs' counsel to determine whether the proposed offer of judgment represents a reasonable settlement offer. First, despite contending that any time modifications made to Plaintiffs' time records were done for legitimate reasons, Defendants agreed to pay Plaintiffs for every hour removed from each Plaintiffs' time records, regardless of the alleged reason for the modification. Second, Defendants agreed, for purposes of settlement only, to assume that any week in which there was a time modification to a Plaintiffs' time records, Defendants lost the tip credit for that workweek and had to pay the full minimum wage for all hours worked. Thus, for any week in which there is a time modification to a Plaintiffs' time records, Defendants agreed to pay the full minimum wage for all recorded and modified hours during that workweek. Defendants also agreed to pay full liquidated damages (i.e., double damages) for all hours worked in any workweek in which there is a time modification to Plaintiffs' time records.

Plaintiffs' counsel discussed the offer of judgment with each Named Plaintiff as representatives of the class and consulted the opt-in Plaintiffs regarding the offer of judgment. Plaintiffs and their counsel agree that Defendants' offer of judgment represents a reasonable compromise over disputed issues of fact and law and provides Plaintiffs with adequate compensation for their alleged unpaid wages and liquidated damages.

In addition to the payments to each Plaintiff, Named Plaintiffs Andrea Samayoa and Marlo Harris and Plaintiffs Carr, Norris, Owens, and Rater will receive service awards in consideration for their assistance to Plaintiffs' counsel and the class throughout this litigation. Plaintiffs Samayoa and Harris served as named Plaintiffs, represented the interests of all class members, and served as counsel's primary point of contact over a year of litigation. Plaintiff Samayoa also attended a full-day mediation on behalf of the class, sacrificing her daily wages for the benefit of the class. Plaintiffs Samayoa, Harris, Norris, Owens, Carr, and Rater, were the original Plaintiffs who helped Plaintiffs' counsel start this case and provided valuable sworn declaration testimony on behalf of the class at the conditional certification stage. In consideration for their efforts on behalf of the class members, Plaintiff Carr will receive $2,500; Plaintiff Harris will receive $3,500; Plaintiff Norris will receive $1,500; Plaintiff Owens will receive $1,500;

Plaintiff Rater will receive $1,500; and Plaintiff Samayoa will receive $4,500. The service payments to the Named and Opt-in Plaintiffs are reasonable consideration for the invaluable assistance provided to the class and class counsel. *See George v. Academy Mortgage Corporation (UT)*, 369 F. Supp. 3d 1356, 1374 (N.D. Ga. 2019) (approving service payments to class members who served as named plaintiffs and provided invaluable services to plaintiffs' counsel and the class members.)

Accordingly, pursuant to the terms of the settlement, each Plaintiff will receive the full minimum wage, plus liquidated damages, for all hours worked during any workweek in which a time modification was made to Plaintiffs' time records. Given the risks inherent in rejecting Defendants' offer of judgment, and because Defendants' offer of judgment is reasonable considering the disputed issues of fact and law, the Parties agree that the amount paid to the class is a fair and reasonable resolution of their bona fide dispute. The amount that each Plaintiff will receive for alleged unpaid wages and liquidated damages is shown in **Exhibit A** to the Settlement Agreement.[2]

---

[2] Certain opt-in Plaintiffs' claims are likely barred by the applicable statute of limitations. Any Plaintiff whose claims are outside the statute of limitations will receive $50 in consideration for releasing his or her claims. The Parties agree this is reasonable consideration for releasing claims that are likely barred by the statute of limitations.

## ATTORNEYS' FEES AND COSTS

The Settlement Agreement provides for Plaintiffs' counsel to receive a reasonable amount of attorneys' fees, expenses and costs to resolve Plaintiffs' claims for fees and costs. After reaching an agreement on the amount to be paid to the named and opt-in Plaintiffs to settle their claims, the Parties held a separate mediation regarding attorney's fees and costs. After significant negotiations, Defendants ultimately agreed to pay $150,000 to Plaintiffs' counsel for alleged attorney fees and costs. Plaintiff's attorney's fees were determined by adhering to the terms of Plaintiffs' contingency fee agreement, which permits Plaintiffs' counsel to receive the greater of either: (1) counsel's actual fees at their hourly rates; or (2) 40% of any sums recovered on Plaintiffs' behalf. In conformance with Plaintiffs' fee agreement, and without regard to the damages received by the Plaintiffs, Plaintiffs' counsel requested that Defendants pay their lodestar fees and expenses which counsel calculated by applying their customary hourly rates of $350 per hour for attorney Dustin L. Crawford (an associate at Parks Chesin and Walbert) and $425 per hour for attorney John L. Mays (a partner at Parks Chesin and Walbert).[3] Plaintiffs' counsel represent that they expended over 500 hours

---

[3] Counsels' rates have been approved by Courts in this District. *See, e.g., Kobelt et al. v. JBRE GA LLC, et al.*, No. 1-15-cv-1550-MHC (N.D. Ga. April 22, 2016) (approving FLSA settlement, including fee request based on attorney Crawford's

litigating this case on behalf of the class members over the course of more than 1 year and accumulated over $180,000 in attorney fees and expenses. After extensive negotiations over attorney fees, Defendants ultimately agreed to pay Plaintiffs' counsel $150,000 in attorney fees and costs, representing a significant discount from counsel's lodestar fees. Counsel agreed to accept less than their lodestar, and less than they would have requested in a contested fee petition, to facilitate settlement. The Parties agree that this compromise represents a fair and reasonable resolution of the amount of attorneys' fees and costs sought by Plaintiffs and to be paid by Defendants.

Finally, the Parties agreed that the amount allocated to Plaintiffs' counsel for attorneys' fees and costs is fair and reasonable in light of the litigation. The Parties advise the Court that the Plaintiffs' proposed attorneys' fees, expenses and costs to be paid by Defendants under the Settlement Agreement are not based upon the amounts claimed to be owed to each Plaintiff. Rather, the attorneys' fees and costs in this case were analyzed, reviewed, and negotiated in addition to – and separate from – the specific amounts recovered on behalf of each Plaintiff. As Judge Presnell explained in *Bonetti*, where

---

rate of $350 per hour and attorney Mays' rate of $425 per hour); *see also Tye et al. v. HCBJR, LLC et al.*, No. 1:17-cv-01087-ELR (N.D. Ga. April 9, 2019) (determining attorney Crawford's rate of $350 per hour is reasonable).

> the plaintiff's attorneys' fee was agreed upon separately
> and without regard to the amount paid to the plaintiff,
> then unless the settlement does not appear reasonable on
> its face or there is reason to believe that the plaintiffs
> recovery was adversely affected by the amount of fees
> paid to his attorney, the Court will approve the settlement
> without separately considering the reasonableness of the
> fee to be paid to plaintiffs' counsel. However, if the
> parties can only agree as to the amount to be paid to the
> plaintiff, the Court will continue the practice of
> determining a reasonable fee using the lodestar approach.

715 F. Supp. 2d at 1228. Because damages and fees were negotiated separately, and the Defendants agree to pay an amount Plaintiffs' counsel is willing to accept, the Court need not engage in an independent analysis of the reasonableness of the attorney fees. *Id.* at 1227-28.

As recognized by the court in *Bonetti*, and confirmed by other Courts in this Circuit, if the Parties submit a proposed FLSA settlement that: (1) constitutes a compromise of the plaintiff's claims; (2) makes full disclosure of the terms of the settlement; and (3) represents that plaintiffs' attorney's fee was agreed upon separately and without regard to the amount paid to the plaintiffs, then the court will approve the settlement without separately considering the reasonableness of the attorney fees. *Id.*[4] Indeed, "the FLSA does not require the court to assess the

---

[4] *See also Davis v. Addiction & Mental Health Services, Inc.*, No. 2-16-cv-01428-JHE, 2016 WL 6395290 at *2 (N.D. Ala. Oct. 28, 2016) (in-depth review of attorney fees is unnecessary when parties agree to fees and damages separately);

fairness of an agreed payment of attorney's fees in settling an individual action."

*Helms v. Central Florida Regional Hosp.*, No. 6:05-cv-383-Orl-22, 2006 WL

3858491 at *3 (M.D. Fla. Dec. 26, 2006); *see Lynn's Food*, 679 F. 2d at 1354 (11th

Cir. 1982). Finally, the fact that counsel's attorney fees exceed the total amount of

damages to the Plaintiffs does not caution against awarding a reasonable fee. *See*

*Millea v. Metro-North R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011); *see also Wales v.*

*Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313 (M.D. Fla. 2001) (awarding over

$300,000 in attorneys' fees where the recovery was $21,000).

Because attorney fees and damages to the Plaintiffs were negotiated

separately, and because Plaintiffs' counsel is accepting a significant reduction from

their lodestar amount to facilitate efficient resolution of this case, the fees

Defendants agree to pay, and that Plaintiffs' counsel agrees to accept, are

reasonable. For all of the previously stated reasons, Plaintiffs have benefited from

---

*Seda v. All Florida Appliance & AC, Inc.*, No. 8-15-cv-311-T-36MAP, 2015 WL 3652833 at *3 (M.D. Fla. June 11, 2015) (because fees and damages were negotiated separately, there is no reason to question the reasonableness of the settlement); *Worley v. North Alabama Family Services, Inc.*, No. 4:12-vc-3458-JHE, 2014 WL 122435 (N.D. Ala. Jan, 13, 2014) (courts are not required to determine the reasonableness of attorney fees where fees and damages are negotiated separately); *Harris v. Waste Services of Alabama, LLC*, No. 2:17-cv-00531-JHE, 2017 WL 6498146 at *2 (N.D. Ala. Dec. 19, 2017) (no analysis of attorney fees required where parties settle back pay and fees separately); *Wing v. Plann B Corp.*, No. 6-11-cv-1499-Orl-36GJK, 2012 WL 4746258, at *4 (M.D. Fla. Sept. 17, 2012) (same).

Plaintiffs' counsel's efforts.  In addition, Plaintiffs' counsel represents that, if the Court grants this Joint Motion and approves the Settlement Agreement, Plaintiffs' counsel will continue to provide legal advice to the Plaintiffs regarding the terms of the Settlement Agreement and will expend additional attorney time administering the settlement proceeds to the Plaintiffs for which counsel will receive no additional compensation.  All these factors warrant the Court approving the Parties' negotiated payment of Plaintiffs' attorneys' fees, expenses and costs in this matter.

## CONCLUSION

For the foregoing reasons, the Parties respectfully request that this Court approve the Parties' Joint Motion and enter the Proposed Order attached hereto as **Exhibit 2**.

Respectfully submitted: September 9, 2019.

| | |
|---|---|
| */s/ Dustin L. Crawford* | */s/ Matthew T. Gomes* |
| Dustin L. Crawford | Matthew T. Gomes |
| Georgia Bar No. 758916 | Georgia Bar No. 297453 |
| Parks Chesin & Walbert | mgomes@wwhgd.com |
| 75 14th Street 26th Floor | Weinberg, Wheeler, Hudgins, |
| Atlanta, Georgia 30309 | Gunn & Dial LLC |
| 404-873-8000 | 334 Peachtree Road N.E. Suite 2400 |
| dcrawford@pcwlawfirm.com | Atlanta, Georgia 30326 |
| Counsel for Plaintiffs | Phone: 404-876-2700 |
| | Fax: 404-875-9433 |
| | Counsel for Defendants |

## **RULE 5.1B CERTIFICATE OF TYPE, FORMAT AND FONT SIZE**

Pursuant to Local Rule 5.1B of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court was computer-processed and prepared with double spaces between lines using Times New Roman font of 14 point size.

This 9th day of September 2019.

*/s/ Dustin L. Crawford*